(Hull, J., sitting in place of Marvin, J.)

LAKE SHORE AND MICHIGAN SOUTHERN RY. CO. v. J. L. BALDWIN.

1. FACTS WHICH FAIL TO ESTABLISH CONTRIBUTORY NEGLIGENCE.

A written notice to a brakeman that repairs are about to be made on a certain bridge, whereby "the head room will be reduced so that it will be about eighteen feet six inches clearance to the underside of the floor beam," without further or more immediate precautions, such as lights or temporary "tell tales," is not sufficient as a matter of law to relieve the railway company of liability for injuries to a brakeman, several days afterwards, on a night run and while in discharge of duties, on top of the train, which demanded his exclusive attention. It can not be said, as a matter of law, that the brakeman, under these circumstances, was guilty of contributory negligence in failing to constantly bear in mind that the bridge was about to be changed or in failing to observe that it had been done.

2. MINOR REPRESENTING HIMSELF TO BE OF AGE—EMPLOYMENT.

A minor who in his application for emloyment from a railway company falsely answers that he is of age and secures employment in violation of a known rule against employing minors, does not thereby become a trespasser, while so employed, or forfeit his right to protection as an employee, when actually engaged in the company's service.

3. SUBJECT TO RULE OF NEGLIGENCE APPLIED TO ADULTS.

Such employee, having represented himself to be of age, must be judged by the same rule of negligence as an adult.

ERROR to Court of Common Pleas of Cuyahoga county.

HULL, J.

Joseph L. Baldwin, the defendant in error is the father of Glenn Baldwin, and brought his action to recover for damages which he claims he sustained by way of loss of service, medical expense and otherwise, on account of injuries which his minor son suffered through the alleged negligence of the railroad company.

The verdict was for $1, 058. 00. Judgment was entered theron, and this action is brought to reverse such judgment. Two grounds are relied upon by counsel for the railroad company, in this proceeding in error:

First. It is claimed that Glenn Baldwin procured his employment from the railroad company by falsely stating that he was at that time twenty-one years of age; and that, therefore, the railroad company owed him no duty to exercise ordinary care in their conduct toward him.

Second. That the railroad company was not guilty of any negligence toward Baldwin, and that he was guilty of contributory negligence at the time of his injury.

Glenn Baldwin made application to the railroad company for employment in April, 1892. He was then only sixteen years of age; his seventeenth birthday was May 12, following. He applied first to the yardmaster at Collinwood, Charles Gilbraith, for a position as switch-tender. Gilbraith gave him a letter which he took to Cleveland and pre-

sented at the office of the yardmaster, where he found George Davis, the son and clerk of the yard mast er,Samuel Davis. George Davis died before the trial below.

According to the testimony of the plaintiff, upon his making application for employment, George Davis asked him various questions and turned to him and said, "You are not of age, are you? And he answered "No." That Davis thereupon said "It will have to appear on this appliaction that you are." And that then Baldwin answered: "You can put me down that I will be twenty-two years in May." Davis put him down as twenty-one in the written application. Davis then told him that he could not be employed, under the rules of the company, unless he was of age; but Baldwin testifies, Davis said to him "that it was a matter of form, that was all it would amount to." The various questions, and the the answers of Baldwin, were reduced to writing and signed by him in the form of the following application for employment.

THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY CO.
TRANSPORTATION DEPARTMENT.

Cleveland, April 11, 1892.

Application of Glenn Baldwin, residing at Nottingham, O., for position of yard switchman.

Married or single; single. Age; 21. Weight; 160 pounds.Height; 5 feet, 7 inches. Color of hair; dark brown. Color of eyes; grey. Name of parents if living; J. L. Baldwin. Residence; Nottingham.

If no family or parents living, give names and residences of relatives or persons you desire notified in case of serious illness, accident or death;
. . . . . . . . . . . . . . . . . . . . .

Have you any physical ailments or defects, such as lameness, deafness, color-blindness or short-sightedness, to render you unfit or unsafe for employment in railway service? None.

Where employed at present, by whom, and in what capacity? Not employed.

State what railroad experience you have had, giving names of roads, in what capacity employed, length of service on each road and cause of leaving each place. No experience.

Have you ever been suspended from any situation? If so, state particulars, when and where? No, sir.

Have you ever been employed by the L. S. & M. S. Ry. before; if so. state when, in what capacity, on what division, and cause of leaving? Truckman at Collinwood Transfer House from February 29th to March 11, 1892; left on account of reducing the force.

I enclose letters of recommendation from the following named responsible parties: (Two letters at least must be enclosed.) L. B. Smith, Nottingham. E. M. Oliver, Nottingham.

Signature, GLENN H. BALDWIN.
(Give full name, no initials.)

After this application was signed Baldwin went to work as a switchman, and after a few months he was given the position of a brakeman. Meanwhile he had been given a copy of the rules of the company, which, among other things, prohibited the employment of minors in such posi-

tions as brakeman or switchman, and these rules were made a part of the contract of employment. Baldwin continued in the employment of the company until the time of his injury, which occurred on February 28, 1895, a period of nearly three years, and from the fall of 1892 until that time he was a brakeman. He performed his duties satisfactorily and was paid his wages therefor by the railroad company, whose officers, so far as appears, aside from George Davis, the yardmaster's clerk, had no inforamtion that he was a minor.

On the night of February 28, 1895, while performing his duties as a brakeman on a freight train called the "Linndale Puller," which ran from Collinwood to Linndale, west of Cleveland, he was struck by a stringer in an overhead bridge, which had lately been put in while the bridge was being repaired, and injured about his head.

A large number of cases have been cited where it was held that persons wrongfully upon trains were trespassers and not entitled to the protection of the railroad company, and learned counsel for the railroad company insist with great vigor and earnestness that under the state of facts in this case, Baldwin was a trespasser and wrong-doer; that he procured his employment in the service of the railroad company by false pretenses; that he was wrongfully upon the train where he was injured; that being a wrong-doer and trespasser the company owed him no duty to provide a safe place for him to work and safe appliances and machinery to do his work. No case directly in point has been cited by counsel, and we have found none.

The rule of the railroad company, requiring its employees to be twenty-one years of age, is a reasonable one, but we cannot agree with counsel that the false statement of Glenn Baldwin as to his age made him a trespasser upon the cars and tracks of the railroad company.

It appears that the representative of the company, the yardmaster's clerk, to whom he applied for employment, knew, either by his appearance or by information, that Glenn Baldwin was not of age, and the first suggestion that Baldwin misrepresent his age came from the clerk of the yardmaster to whom Baldwin made his application for employment. Although Davis had no authority to waive any rules of the company, he had authority to receive Baldwin's application for employment and to propound to him such questions as were required by the railroad company. Baldwin entered into the employ of the company under these circumstances. He had made no attempt to deceive the agent of the company to whom he made this application, but did state his age falsely to the company in the writing he signed. He remained in the employ of the company and its service, performing his duties and receiving his wages, for a period of nearly three years.

But aside from all this, and puting it as strongly as counsel for the company can put it, that he falsely represented his age to the company and colluded and connived with George Davis to deceive the company, we still think that while he was in the actual service of the railroad company he was entitled to the protection of an employee. The fact that he had misrepresented his age and the further fact that he was a minor, did not make the contract for services void, but voidable. The railroad company, having been deceived, on the other hand could terminate it whenever it discovered the deception; but until one party or the other put an end to the relation, the contract continued to exist. He was not of age,

but an infant cannot repudiate an executed contract for his services if such contract was apparently fair and reasonable and the other party does not know of his infancy, but he can abandon the services when he pleases or ask for new terms. 41 Mich., 191.

But it is said that this contract was induced by the fraudulent representations of Baldwin that he was of age, and that the railroad company would not have employed him had it known he was a minor. The question as to his age was not the only one asked Glenn Baldwin in this application. He was asked whether he was married or single, whether he had any physical ailments or defects such as lameness, deafness, color-blindness, etc., which would render him unfit or unsafe for employment in the railway service; where he had been employed, whether he had ever been suspended from any situation, and several other questions, as appears from the application. He falsely stated his age. A false statement as to any other material matter would have the same effect upon the contract and the relation created between him and the railroad company. The railroad company might fix the age limit at twenty-five instead of twenty-one, and, if this were done, would a misstatement of a man twenty-one years of age that he was twenty-five, render his contract void and make him a trespasser and wrong-doer upon the cars and tracks of the railroad company so as to deprive him of the protection due an employee? The railroad company might deem it important that their employees be married men, for the reason that they might be more careful than single men. Would a misstatement by an applicant for employment that he was married, while he was single, make him a trespasser? The case is the same with a railroad company as it would be with any other person or corporation employing men. A farmer might state to an applicant for work upon his farm that he would not employ a man unless he was twenty-one years of age. It does not seem to us that a misstatement by a laborer seeking employment under those circumstances, as to his age, would make him a trespasser upon the farmer's land and deprive him of his rights growing out of the relation of master and servant.

Baldwin falsely stated his age to the railroad company to be twenty-one when he was only sixteen but he entered into the employment of the company, he was actually in their service at the time of his injuries, and in our opinion is to be treated in this case as an employee and not as a trespasser. If the railroad company suffered any damage on account of Baldwin's misrepresentation or fraudulent statement, if it may be called such, it would be entitled to set that up against him in an action for wages or to bring a suit for damages. It is held everywhere that an infant is liable for his torts.

Having represented himself to be of age, he is to be judged by the same rule of negligence as an adult, and that rule was laid down in the trial of the case below. If he was guilty of negligence contributing to his injury, his youth or inexperience would not excuse him. He is to be judged by the same rule as a man twenty-one years of age and over, and was so judged in the trial of the case.

And this brings us to the question as to whether the railroad company was guilty of any negligence toward Baldwin, which was the proximate cause of his injuries, and whether, on the other hand, Baldwin was guilty of any contributory negligence which would bar his recovery.

Railway Co. v. Baldwin.

Counsel for plaintiff in error insist that the record shows that the railroad company was guilty of no negligence, in its treatment of Baldwin, and that upon the undisputed facts he was guilty of negligence which contributed to his injury.

The bridge where Baldwin was injured is situate just west of the union depot in the city of Cleveland. It is an overhead bridge passing over the main track between the depot and the river bridge. As has been said, Baldwin was injured on February 28, 1895. He then lacked about three months of twenty years. He had been in the employ of the railroad company at this time nearly three years, as switchman and brakeman, and for a period of three months had been making the run between Collinwood and Lanndale, practically every night, acting as head brakeman on a freight train which made this run, and on each trip he passed under this bridge, so that he was well acquainted with its location, and had passed under it hundreds of times, going back to Collinwood each morning after making the trip the night before. On February 18, prior to the accident, a written notice was sent out that repairs were about to be made upon this bridge. We find from the record that this notice was given to Baldwin in person, and is in the following words:

THE LAKE SHORE & MICHIGAN SOUTHERN RY. CO.

TOLEDO DIVISION.

OFFICE OF SUPERINTENDENT.

CLEVELAND, OHIO, February 18, 1895.

ALL CONCERNED:

Repairs are about to be made to the overhead bridge just west of union passenger depot, Cleveland, and, during process of this work, the head room will be reduced so that it will be about 18 feet 6 inches clearance to the under side of floor beam. Please be governed accordingly in passing under the bridge.

J. K. RUSSELL, Superintendent.

The testimony is conflicting as to when the repairs were commenced, after the notice was given. The men in charge of the repairs testified that they were commenced very soon, perhaps the next day, and on the twenty-second or twenty-third of February, five or six days before the accident, the stringer or beam which struck Baldwin's head had been put in place, to support the bridge while repairs were going on. This stringer was about sixteen inches through, lowering the bridge that much. Before this change was made, the bridge was perfectly safe for all brakemen and employees. Baldwin testified that he noticed no repairs being made in the bridge until after his injury; and the testimony of some of the other witnesses, among them the engineer on the train, is to the same effect. Baldwin testified that he passed under the bridge the morning of the day he was hurt.

No other precaution was taken or warning given by the company besides the written notice to which I have referred. The jury by their verdict found that the railroad company did not exercise ordinary care in the notice and warning given, and this finding, counsel for plaintiff in error insist, is clearly against the law and the weight of the evidence. In

our judgment this court would not be warranted in disturbing this finding of the jury.

The bridge until this change was made. was perfectly safe.

An overhead bridge which is not high enough for a man on top of cars to pass under, creates a danger which is a continual menace to the life of the railroad brakeman. The change that was made in this bridge subjected Baldwin to a greatly increased peril in making this trip, and the railroad company was bound to use all reasonable means and precautions to warn him of this new danger.

It will be observed that the notice that was given did not notify him of the number of inches or in what manner the bridge would be lowered. It simply notified him that "The head room will be reduced so that it will be about eighteen feet, six inches clearance to the under side of the floor beam." A more definite notice might have been given. Other precautions might have been taken. A red light might have been placed at the bridge, or temporary whiplash screens, or telltales as they are called, erected, thus giving immediate notice at the time to the brakeman that he was approaching the bridge which had been lowered.

It is impossible to discuss the negligence of the plaintiff in error without at the same time considering the question of contributory negligence on the part of Baldwin. The two must be considered together. Baldwin had received notice, the notice that has been referred to, that repairs would be made to the bridge. It is claimed by counsel that from that time he should have looked out for any change that might be made; that he was notified that the head room would be reduced and knew the peril that he would be subjected to; that he had made this trip a great many times, knew where this bridge was located, and must have known that he was approaching it at the time that he was injured.

Glenn Baldwin, however, had his duties to perform as a brakeman, upon this train. He was the head brakeman, and at the time of his injury was standing on the fifth car from the engine. The hind brakeman was at the rear end of the train, where his duty required him to be. At this point there is a curve in the road, and there was danger of the train breaking, and it was Baldwin's duty to watch the rear end of the train and be in a position to see any signal that might be given by the rear brakeman that the train had broken. As he approached this bridge, he was standing with his face toward the lake, watching the rear of the train, with the left side of his head turned towards the bridge. The train was going quite fast. He was intent upon the work that he was doing, which was required by the rules of the company. He did not think of this bridge or the danger that he was approaching, but can it be said as a matter of law that on this account he was guilty of contributory negligence? We think not, and, in this conclusion, in our judgment. we are fully sustained by the authorities. It was the right of the railroad company to make the repairs in this bridge. Of this there can be no question. But while they were being made, it was the duty of the company to protect its employees from the increased danger. caused by such changes. The fact that this bridge was safe before the changes were made, that Baldwin had passed under it a great many times in safety, only made it the more likely that he would forget the proposed repairs and suffer injury accordingly.

The railroad company did not undertake to give Baldwin immediate notice of his danger at the time he was approaching the bridge. It was at

Railway Co. v. Baldwin.

night and his duties were such that they demanded his exclusive attention, and he cannot be charged, as a matter of law, with contributory negligence because he did not retain constantly in his mind the fact that the bridge was about to be changed and lowered or did not observe this, had already been done, if such was the fact.

The Supreme Court of Wisconsin says in 42 Wis., 399:

"The safety of railroad trains depends largely upon the exclusive attention of those operating them, to the track, and to the trains themselves. It is not for the interest of railroad companies or of the public—with like, if not equal, concern in the safety of trains,—that persons so employed should be charged with any duty or necessity to divert their attention. And it appears to us very doubtful whether persons operating railroad trains, and passing adjacent objects in rapid motion, with their attention fixed upon their duties, ought, without express proof of knowledge, to be charged with notice of the precise relation of such objects to the track. And even with actual notice of the dangerous proximity of adjacent objects, it may well be doubted whether it would be reasonable to expect them, while engaged in their duties, to retain constantly in their minds an accurate profile of the route of their employment and of collateral places and things, so as to be always chargeable as well by night as by day with notice of the precise relation of the train to adjacent objects. In the case of objects so near the track as to be possibly dangerous, such a course might well divert their attention from their duty on the train, to their own safety in performing it. Notwithstanding some things said in some cases, cited for the appellant, we should be rather inclined to think that in the absence of express notice of immediate danger, employees operating trains may perform their duties under an implied warrant that they may do so without exposing themselves to extraordinary danger; that is, danger not necessarily incident to the course of their employment."

This doctrine has been recognized by our own Supreme Court in Snyder vs. Railway Co., 60 Ohio St., 487, 496, the court say:

"We are of the opinion that testing the question by the allegations of this petition, it cannot be said that the company did not owe Snyder the duty of giving warning of the approach of the freight train. The deceased, with knowledge of the company and by its orders, was engaged in a duty which required him to be upon the main track, and thus in a place of danger. Strict attention to the work in which he was thus engaged might have been inconsistent with constant watchfulness as to approaching trains. It is not impossible that this may have been the case, and it does not appear from the petition that it was not. If it were then, under the holding of this court in Railway Co. v. Lavalley, 36 Ohio St. 221, and in Railway Co. v. Murphy, 50 Ohio St., 135 (where it is held that it is the duty of a railroad company to make such provisions for the safety of its employees as will afford a reasonable protection against the dangers incident to their work), the company should have taken reasonable care for Snyder's safety, and a failure to perform the duty was negligence on the part of the company."

A New York case is directly in point, 138 N. Y., 302. This was a case where a brakeman was struck by a low bridge and injured. He had been over the road many times. The tell-tales or whip-lash screens which had been erected had gotten out of repair, but the brakeman had

full knowledge of the bridge and its condition. The court say in the *syllabus*:

"A brakeman on top of a moving train, as matter of law, is not chargeable with negligence, simply because he does not constantly bear in mind the precise location where his train and where every bridge over the track is."

Plaintiff, a brakeman in defendant's employ, while standing on top of a freight car on a moving train, was struck by a low bridge and injured. In an action to recover damages, these facts appeared: It was plaintiff's duty to be on top of the cars, among other things for the purpose of keeping watch to see that the train did not part. There were fifty-four cars in the train, and two brakemen upon it; at the time of the accident the train was at a place where there was a reverse curve in the road and more than ordinary risk of its breaking. Plaintiff was standing with his face to the rear of the train in a position most effectually to discharge his duties; he had been in defendant's employ for several weeks and knew of the existence of the bridge, but was not at the time aware that he was approaching it and had no warning of the danger. Defendant had in compliance with the statute (Chap. 439, Laws of 1884), erected warning signals, called tell-tales, to warn brakemen on the top of cars of their approach to bridges. The one at this bridge was out of order so that it gave no warning: Held, that plaintiff was not, as matter of law, chargeable under the circumstances with contributory negligence, because he did not take notice of the fact that he was approaching the bridge; also that defendant was guilty of negligence in not keeping the tell-tale in order.

The following from Shearman & Redfield on Negligence, vol. 1, sec. 200, is pertinent:

"And the natural presumption that a man under such circumstances either does not know or has excuseably forgotten the danger, is so strong, that clear evidence should be required to rebut it. Such a case differs widely from those cases in which men risk leaping on or off a train. There the chances are in favor of safety. In the case of a low bridge, the failure to stoop involves absolutely certain injury. There is no chance for any other result. It is impossible that any sane man, not intending suicide, should knowingly take such a risk. It is not at all surprising that brakemen should often forget that a bridge is dangerous or fail to see that they are near it. The marvel is that men under such circumstances ever remember it in time, especially at night. They can only do so by the exercise of extraordinary care, which they are never bound to exercise."

We hold that this record does not show, as a matter of law, that Glenn Baldwin was guilty of contributory negligence, nor is the finding of the jury that the plaintiff in error did not exercise ordinary care toward him contrary to law or against the weight of the evidence.

We find no errors in the record, and the judgment of the court of common pleas is, therefore, affirmed.

*Dickey, Brewer & McGowan,* for plaintiff in error.

*J. F. Herrick* and *Herrick & Hopkins,* for plaintiff in error.